NEC CORPORATION and NEC Electronics Inc., Plaintiffs,

v.

INTEL CORPORATION, Defendant.

No. C–84–20799–WAI.

United States District Court, N.D. California.

March 5, 1987.

Alan H. MacPherson, Robert B. Morrill, Richard Franklin, Santa Clara, Cal., Justin T. Beck, Skjerven, Morrill, MacPherson, Franklin & Friel, Robert C. Hinckley, NEC Electronics Inc., Mountain View, Cal., for plaintiffs.

Lois W. Abraham, R. Scott Behm, Brown & Bain, Palo Alto, Cal., F. Thomas Dunlap, Jr., Intel Corp., Santa Clara, Cal., for defendant.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

This an action brought by NEC Corporation and NEC Electronics Inc. ("NEC") for a declaration that certain copyrights of defendant Intel Corporation ("Intel") are invalid and, even if valid, are not infringed by NEC. The action was filed on December 21, 1984, and assigned to the Honorable William A. Ingram who tried it between May 12 and July 10, 1986. Partial findings of fact and conclusions of law were signed by Judge Ingram on September 22, 1986, 645 F.Supp. 590, substantially upholding the validity of Intel's copyrights.

By letter dated October 22, 1986, counsel for NEC advised Judge Ingram that the Financial Disclosure Report, signed by him May 1, 1986, listed an interest in Mercedes Investment Fund—An Investment Club ("Mercedes") and disclosed that Mercedes held 60 shares of Intel. The letter suggested that 28 U.S.C. § 455 might be implicated.

Upon receipt of the letter, Judge Ingram resigned from Mercedes. His interest in Mercedes, which he redeemed, was valued at less than $2,000 and his interest in the Intel stock, which he relinquished, at about $80. A hearing was held on October 27, 1986, at which Judge Ingram stated that he had not been aware of his interest in Intel and invited counsel to file an appropriate motion. NEC's motion for disqualification was filed November 3, 1986, and referred by Judge Ingram to the court's Assignment Committee, which assigned it to the undersigned.

The motion is based on 28 U.S.C. § 455 which in relevant part provides:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

\* \* \* \* \* \*

(4) He knows that he, individually or as a fiduciary, ... has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(c) A judge should inform himself about his personal and fiduciary financial interests. . . .

\* \* \* \* \* \*

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

\* \* \* \* \* \*

(4) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

(i) Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

\* \* \* \* \* \*

(e) No justice, judge, or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b).

■ NEC claims that subsections (a) and (b)(4) of section 455 require disqualification of Judge Ingram. NEC asks not merely that Judge Ingram be disqualified, but that he be disqualified "from the inception of this proceeding." The Court has determined, however, that section 455(b)(4) does not require disqualification from "inception" because Judge Ingram did not know he had an interest in a party until NEC notified him of that fact. Nor does section 455(a) require disqualification from that date because Judge Ingram's interest, considering its size and remoteness, was too slight to raise a reasonable question as to his impartiality. Finally, prospective disqualification is not required because Judge Ingram has divested himself of his interest in Intel.

■ Section 455(b)(4) requires a judge to disqualify himself if "[h]e knows that he ... has a financial interest in a party to the proceedings...."[1] The statute clearly requires disqualification only when a judge knows both that he has an interest in some entity *and* that the entity is a party to

---

1. Mercedes does not fall within the statutory exception to section 455(b)(4) for a "mutual or common investment fund." Under the Joint Venture Agreement creating Mercedes, membership is limited to 24 members and decisions to buy or sell securities are made by vote of a majority of the voting power present at the meeting. This arrangement makes the exception inapplicable because "the judge participates in the management of the fund." 28 U.S.C. § 455(d)(4)(i).

litigation before him.[2] It is not enough, therefore, that he knows he has an interest in a particular corporation that happens to be a party; the statute requires conscious awareness that the corporation in which he has an interest is a party to litigation before him. The reported decisions are consistent with that interpretation. *See Hodosh v. Block Drug Co.*, 790 F.2d 880, 881 (Fed.Cir.1986); *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 801–02 (5th Cir.1986); *Union Carbide Corp. v. U.S. Cutting Serv., Inc.*, 782 F.2d 710, 713–14 (7th Cir.1986); *In re Cement & Concrete Antitrust Litigation*, 515 F.Supp. 1076 (D.Ariz.1981), *mandamus denied on the merits*, 688 F.2d 1297 (9th Cir.1982), *aff'd*, 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983) (*"Cement"*). Moreover, that interpretation is consistent with the statutory purpose to avoid conflicting interests. Unless a judge knows that a company in which he has an interest is a party, he has no incentive to favor that party. *See Union Carbide*, 782 F.2d at 714; *Cement*, 515 F.Supp. at 1081.

Intel opposes the motion on the ground that the requisite knowledge is lacking. NEC contends that the filing of Judge Ingram's Financial Disclosure Report on May 1, 1986 established knowledge under section 455(b)(4). That contention is without merit. The report may be sufficient proof that Judge Ingram knew he had an interest in Intel on that date, but it does not establish conscious awareness of the connection between his interest in Intel and the present litigation. A judge's case load continually changes; as old cases are terminated, new cases are filed. Concurrently, the judge's financial interests may also change, and some of those changes may not be his doing, as when companies are sold, merged, or acquired. In some cases, a judge may hold an interest in whose acquisition he had little or no part, or which he does not own directly, both of which could be true of interests held through investment clubs. Thus, to keep track of the constantly changing correlation between one's case load and one's interests may require constant attention. Notwithstanding the statutory obligation to keep informed, it is only human for a judge's attention to flag or be distracted at times. That the judge may have certified a Financial Disclosure Report does not necessarily mean that he is constantly checking his interests against his case load. A Financial Disclosure Report therefore does not provide conclusive proof of whether or when a judge has the requisite knowledge of a financial interest in a party for purposes of disqualification under section 455(b)(4).

NEC argues that if the Financial Disclosure Report is not conclusive proof of a judge's knowledge of an interest in a party, the door is opened to an inquisition into the judge's state of mind. This inquiry might entail deposing, examining, cross-examining, and impeaching the judge and might require another judge to make findings of fact on a colleague's credibility. NEC is correct in arguing that this "unseemly procedure" (Reply Brief at 7) would do little to advance the statutory purpose to "promote public confidence in the impartiality of the judicial process," House Report, *supra*, at 1974 U.S.Code Cong. & Admin.News 6357, and should be avoided.

But NEC's proposed alternative—making the Financial Disclosure Report conclusive proof of knowledge—is equally inappropriate. As already noted, the report does not establish knowledge of an interest in a party. In addition, NEC's approach could give a party an incentive not to call an interest disclosed in a Financial Disclosure Report to a judge's attention, preferring instead to hold it as an anchor to windward against the possibility that it might be needed in the future to avoid an unfavora-

---

**2.** Section 455(c)'s requirement that a judge "inform himself about his personal and fiduciary financial interests" does not impose a constructive knowledge standard on section 455(b)(4), as NEC suggests. The legislative history indicates that the purpose of section 455(c) was to preclude resort to blind trusts to avoid disqualification. H.R.Rep. No. 93–1453, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 6351, 6356 ("House Report").

ble ruling.[3] A judge's disqualification under section 455(b)(4) should be deemed to arise when his knowledge of the financial interest in a party is unequivocally established, i.e. when a party brings the interest to his attention. Thus, retroactive disqualification—disqualification from the date of the report or some other prior event—is not available under section 455(b)(4).

Retroactive disqualification may be imposed under other subsections of section 455. *See, e.g., Health Servs.,* 796 F.2d at 802–03; *Potashnick v. Port City Constr.,* 609 F.2d 1101, 1110–15 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). The other subsections, however, impose objective standards for disqualification. The circumstances giving rise to retroactive disqualification under those subsections do not include the judge's state of mind. Because section 455(b)(4) imposes a subjective standard, retroactive disqualification is not appropriate.[4] NEC's claim that Judge Ingram was disqualified under section 455(b)(4) as of May 1, 1986, must therefore be rejected.

NEC argues that even if Judge Ingram did not know of his interest in Intel under section 455(b)(4), he should be disqualified under section 455(a). Section 455(b)(4), according to NEC, reflects a Congressional judgment that a judge's impartiality may reasonably be questioned if he knows he has a financial interest, no matter how small, in a party. NEC contends that since an objective observer would conclude that Judge Ingram knew of his interest in Intel no later than May 1, 1986, when the Financial Disclosure Report was filed, he might reasonably question the Judge's impartiality.

This argument is not persuasive for a number of reasons. First, NEC mischaracterizes Congress's intent. Congress defined financial interest to include any interest "however small," because the existing standard requiring determination of whether an interest was "substantial" was too difficult to administer. *See* House Report, *supra,* at 1974 U.S.Code Cong. & Admin. News 6356. Congress did not conclude that any interest, no matter how small, in a party raises a question as to a judge's impartiality. Second, NEC's suggested interpretation of section 455(a) would make section 455(b)(4) superfluous; if a judge is disqualified under section 455(a) as of the date an objective observer would conclude that he has knowledge of a financial interest in a party, then *a fortiori* he is disqualified whenever he has actual knowledge of an interest. Finally, the suggested interpretation would make a nullity of the knowledge requirement under section 455(b)(4).[5] Because Judge Ingram's inter-

---

**3.** Or a party might defer inspection of the Financial Disclosure Report until after an adverse decision has been issued. For example, in this case, Judge Ingram's report was placed in the public file of the clerk's office of this court on May 5, 1986. NEC inspected the file about October 8, 1986, and sent a letter suggesting the presence of a disqualifying interest October 22, 1986, one month after Judge Ingram signed findings of fact and conclusions of law adverse to NEC.

**4.** This interpretation of the section does not vitiate its remedial purpose. Financial Disclosure Reports provide litigants with the means to discover disqualifying interests and bring them to the judge's attention. The 1978 Ethics in Government Act requires judges to file a report annually. 28 U.S.C.App. II §§ 301 *et seq.* A copy of the report must be filed with the clerk of the court on which the judge sits or serves, *id.* § 303(b), and is available for inspection by any person, *id.* § 305(b)(2). *See supra,* note 3.

If this means of obtaining disqualification is not available to a litigant because a judge's Financial Disclosure Report does not reveal his interest in a party, the litigant is still free to seek disqualification under section 455(a) on the ground that the interest raises a reasonable basis for questioning the judge's impartiality. *See, e.g., Health Servs.,* 796 F.2d at 802–03; *see infra.*

**5.** *Health Services Acquisition Corp. v. Liljeberg,* 796 F.2d 796 (5th Cir.1986), does not support NEC's position. In that case, the court held that "[u]nder section 455(a) ... recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge." *Id.* (citation omitted). The court did not conclude that section 455(a) required recusal regardless of the magnitude of the interest involved.

est in Intel was too slight for his impartiality to be reasonably questioned, he is not disqualified under section 455(a).

The remaining question is whether Judge Ingram is disqualified from continuing to sit on this case, having disposed of his interest in Mercedes, without consideration for his allocable share of the Intel stock, promptly after receipt of counsel's October 22, 1986, letter. As noted in an opinion by the Advisory Committee on Codes of Conduct, the provision for disqualification in section 455(b)(4) is "couched in the present tense, providing that a judge should not sit when he or she 'has' such an interest." United States Judicial Conference, Advisory Committee on Codes of Conduct, Advisory Opinion No. 69 (Oct. 15, 1981). The opinion concluded that although in some cases participation in a case after disposition of the disqualifying interest may appear improper,

> the majority of the Committee considers likelihood of such appearance remote. In those cases in which a great deal of time and effort had been invested by the judge, by counsel, and by the litigants, when the existence of the disqualifying interest came to light, the public interest in the efficient administration of justice would appear to outweigh concern for an appearance that the judge is seeking to continue participation in a particular case.

*Id.; see also Union Carbide Corp. v. U.S. Cutting Serv.*, 782 F.2d 710 (7th Cir.1986). That opinion, while not binding, is persuasive here where those factors are present.

Section 455(a) creates adequate protection where there may be a reasonable basis to fear judicial resentment over having been compelled to dispose of a financial interest. Judge Ingram's interest in Mercedes was too slight to afford a basis for questioning his impartiality on that ground.

For the reasons stated, therefore, the motion to disqualify is denied.

IT IS SO ORDERED.